Filed 3/19/13  In re L.P. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re L.P. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, | A135810 |
| Plaintiff and Respondent, | (Alameda County Super. Ct. |
| v. | Nos. J177157, J177158, |
| KRISTA S., | and OJ10015185) |
| Defendant and Appellant. | |

S. (mother) appeals from a juvenile court order limiting her right to make educational decisions with respect to her three children.  She contends the court abused its discretion and violated her due process rights by limiting her "educational rights."

We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We provide only the factual and procedural details that are germane to mother's specific claims.

Mother has three children: L.P. (born in 1996), A.P. (born in 1999), and A.S. (born in 2001).  In July 2010, the Alameda County Social Services Agency (the Agency) filed a petition alleging the children came within Welfare and Institutions Code section 300,

1

subdivision (b), specifically that: (1) mother's anger management problem and drinking and drug use prevented her from adequately parenting the children, (2) mother "physically abused all of the [children] with brooms, belts or her hand," and (3) "mother [did] not have sufficient food in the home at all times because she uses the money to buy alcohol and drugs."[1] The court detained the children, found jurisdiction, and ordered reunification services for mother. In July 2011, the court returned the children to mother's care under the supervision of the Agency. In December 2011, the court issued a bench warrant for mother and a protective custody warrant as to the children because the minors had not been seen in several weeks.

*The Section 387 Petition and Restraining Order Application*

In January 2012, the Agency filed a section 387 petition stating: (1) the children had been detained; (2) mother had failed to adhere to her case plan; and (3) mother refused to inform the court about her children's whereabouts and was "hiding" them from the Agency and the court. The court detained the children and authorized the Agency to facilitate supervised phone contact between the children and mother. The court later authorized the Agency to facilitate supervised visits between the children and mother.

In early April 2012, counsel for the children requested the court modify the current visitation and contact order "to more appropriately meet the children's needs and avoid further detrimental contact." On April 12, the Agency filed an interim review report describing the children's various behavioral problems and reporting that, among other things, A.P. had been involuntarily hospitalized after writing in a school journal that he wanted to kill people at school. According to the Agency, the children "want a healthy mother who does not hit them, beat them or berate them. . . . [M]other sees nothing wrong in her behavior which is why it is difficult for her to consider changing her

---

[1]   Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code. The Agency filed a section 300 petition in 1999 alleging the children came within section 300, subdivisions (a), (b), and (j). The children were returned to mother's custody after spending nearly four years in foster care. The presumed father is not a party to the appeal.

behavior. [She] does not connect the dots between her addictions, and mental health issues and the [children's] behavior."

That same day, children's counsel filed a restraining order application requesting the court order mother to stay away from the children, their schools, and their foster parents. The application stated mother had defied the search and seizure warrant issued in December 2012, had refused to disclose the location of her children for three weeks, and had harassed and verbally threatened the children since they entered foster care. The court issued a restraining order prohibiting mother from visiting the children and from going near the location where the children were visiting each other. Although the court allowed mother to have supervised telephone contact with A.S., it determined mother had "continued to engage in a pattern of harassment of both the children and foster mother" and had "placed the children in an emotionally compromised position leading to one of their hospitalizations."

Following the contested jurisdictional and dispositional hearing on the section 387 petition, the court issued an order concluding, among other things, that: (1) the allegations in the section 387 petition were true; (2) mother had failed to comply with her case plan; and (3) there was clear and convincing evidence that returning the children to mother's custody would cause a "substantial danger [their] physical health, safety, protection, or physical or emotional well-being." The court ordered mother to "cooperate with and make reasonable efforts to obtain all educational services necessary to meet the needs of the children" and advised her "that failure to do so may result in termination of [her] educational rights and appointment of an educational surrogate." It denied further reunification services for mother, reissued the April 2012 restraining order, and set a status review hearing.

In early May 2012, and following a hearing on L.P.'s motion to modify the restraining order, the court ordered mother "not to have any type of contact" with L.P. and "not to take any actions related to [her] educational issues."

3

*The Order Regarding Mother's Educational Rights*

At a May 22, 2012 review hearing, counsel for mother urged the court to allow mother to retain her educational rights "as long as there is a clear understanding that [she] is to have no physical contact during that time with her children." Counsel explained it was "not necessary to protect the child[ren] by completely eliminating mother's educational rights." Counsel claimed mother had "been a constant advocate for her children. With regard to [L.P], [mother] has spoken to the Oakland Unified School District when she realized that there was going to be an [individualized education plan] regarding [L.P.] and she informed them that there is an existing restraining order out against her; and . . . the Oakland School District advised her that she could meet with the group separately. As long as there is no contact, the mother wishes to be able to exercise her educational rights. She realizes that this has to be outside the presence of her children. She has already signed on." Counsel continued, mother "feels that [L.P.] could use her in the school setting. She has already signed [A.P.] up for summer school, but she's had no opportunity to do anything with regarding to [A.S.] because she . . . has no idea what school [A.S.] goes to and even how she is doing."

In response, counsel for the children argued maintaining mother's educational rights "creates the opportunity for [her] to be more involved and more engaged and to regain custody. Mother's control and custody have led them to have intense disruption. They've experienced multiple placement changes, trauma and confusion and instability." Counsel also noted that the restraining order and mother's "behavior" constituted circumstances compromising her ability to exercise her educational rights under section 358.1, subdivision (e).[2] Regarding telephone contact, counsel for the minors expressed

---

[2]    Section 358.1, subdivision (e) requires a social worker or child advocate who prepares a social study or evaluation to discuss the following subject: "If the parent or guardian is unwilling or unable to participate in making an educational decision for his or her child, or if other circumstances exist that compromise the ability of the parent or guardian to make educational decisions for the child, the county welfare department or social worker shall consider whether the right of the parent or guardian to make educational decisions for the child should be limited. If the study or evaluation makes that recommendation, it

4

concern that mother would "abuse that privilege" and "bait the children into communicating with her. . . . [¶] . . . [M]other has failed to put the children's needs first. Again, to allow supervised phone contact would only give [her] an opportunity to abuse that privilege and abuse that right."

After hearing additional argument from counsel, the court stated: "Based on the totality of the circumstances and my review of all of the reports in this matter, I have to agree with [counsel for the children]. I think that [mother] should not be having any contact with the children. I do think that the children are entitled to some stability. I do not believe that [mother] should be in charge of [L.P.'s] educational rights." In addition, the court agreed with counsel for the children's recommendation that mother's educational rights be limited as to A.P. and A.S. Following the hearing, the court issued "Findings and Orders Limiting Right to Make Educational Decisions for the Child, Appointing Educational Representative, and Determining Child's Educational Needs" (form JV–535, rev. July 1, 2008) limiting mother's educational rights as to the children. The court also modified the restraining order issued in April 2012 to prohibit mother from contacting L.P.'s foster mother, as well as the three children.

## DISCUSSION

Mother contends the order limiting her right to make educational decisions with respect to the children must be reversed because: (1) the order is not supported by substantial evidence; (2) the court based "its determination on improper factors[;]" and (3) the court violated her due process rights.

Parents have a constitutionally protected right to control their children's education. (*Troxel v. Granville* (2000) 530 U.S. 57, 65; *In re R.W.* (2009) 172 Cal.App.4th 1268, 1276.) The juvenile court, however, may limit a parent's right to control his or her child's education when the child has been declared a dependent under section 300. (§ 361, subd. (a)(1); Cal. Rules of Court, rule 5.650(a).) The court has broad discretion to

_____

shall identify whether there is a responsible adult available to make educational decisions for the child pursuant to Section 361."

5

make reasonable orders for the care and support of a child, but any limitations on a parent's control over educational decisions under section 361 must not exceed "those necessary to protect the child." (§ 361, subd. (a)(1); *Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1087, fn. 12.) We review the juvenile court's order limiting mother's educational rights for abuse of discretion. (*In re R.W.*, at p. 1277.) Under that standard, we do not disturb the ruling unless we find the juvenile court " ' "exceeded the bounds of reason" ' " and find the order " ' "an arbitrary, capricious, or patently absurd determination." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Mother contends the procedure used to limit her educational rights was somehow unfair because there was no substantial evidence that the limits placed on her educational rights were "necessary to protect" the children under section 361, subdivision (a)(1). We disagree. The court had before it evidence establishing mother did not comply with her case plan and that she had defied various court orders, including a restraining order. The court also had before it evidence that mother's involvement in the children's lives was disruptive and traumatic: it had determined mother had "continued to engage in a pattern of harassment of both the children and foster mother" and had "placed [the] children in an emotionally compromised position leading to one of their hospitalizations." Mother's involvement in her children's education may have been well intentioned, but it exacerbated her children's behavioral struggles and caused instability in their lives. Based on this evidence, the court was well within its discretion to conclude limiting mother's educational rights was "necessary to protect" the children under section 361. (*In re R.W., supra,* 172 Cal.App.4th at p. 1277 [evidence "amply supported the juvenile court's decision" to limit the parents' educational rights].)

Next, mother seems to contend insufficient evidence supports the order because her trial counsel stated at the May 22, 2012 hearing that a representative of the Oakland Unified School District would allow mother to "be involved in the [individualized education plan for L.P.] by meeting with the group separately from the child." According to mother, the court should have treated counsel's statement as "evidence" because counsel was an officer of the court and because none of the parties objected to, or

6

disputed, counsel's statement. We are not persuaded. Assuming for the sake of argument that counsel's statement was — as mother contends — "evidence," it would not alter our conclusion given the overwhelming evidence supporting the court's conclusion that limiting mother's educational rights was "necessary to protect" the children under section 361.

That mother was willing and able to exercise her educational rights does not demonstrate the court abused its discretion by restricting those rights. In an April 2012 report, the Agency opined that the children's "mother sees nothing wrong in her behavior which is why it is difficult for her to consider changing her behavior. [She] does not connect the dots between her addictions, and mental health issues and the [children's] behavior." Mother had not "shown good judgment in making decisions affecting [the children and] had been deemed an unfit parent, and her reunification services had been terminated." (*In re R.W., supra,* 172 Cal.App.4th at p. 1278.) Given mother's lack of self-insight and self control, her willingness to exercise her educational rights does not undermine the court's conclusion that limiting those rights was "necessary to protect" the children. (§ 361, subd. (a)(1).)

Mother claims the court improperly "agreed" with statements made by counsel for the children because those statements were unsupported by the evidence. Mother also contends the court improperly relied on counsel's statements, which somehow demonstrated the court "did not understand the controlling legal principles involved in the determination." We disagree. The court based its ruling on "the totality of the circumstances" and on its "review of all of the reports in this matter" not on any one factor or statement by counsel.

Finally, mother suggests the order limiting her educational rights violated her constitutional right to due process. Mother has not established a due process violation. Mother had notice that the court might limit her educational rights. At a hearing in April 2012, the court ordered mother to "cooperate with and make reasonable efforts to obtain all educational services necessary to meet the needs of the children" and advised her "that failure to do so may result in termination of [her] educational rights and appointment of

7

an educational surrogate." In addition, mother was present at the May 22, 2012 hearing and was ably represented by counsel. Mother does not argue she was prevented from offering evidence supporting her desire to retain educational rights at the hearing. (See *In re R.W., supra,* 172 Cal.App.4th at p. 1278 ["[m]other does not contend she wanted to present evidence or testify at the hearing"].)

## DISPOSITION

The juvenile court's May 22, 2012 order limiting mother's educational rights is affirmed.

_____
Jones, P.J.

We concur:

_____
Simons, J.

_____
Needham, J.

8